STATE ex Rel. COUNTY OF MUSSELSHELL et al., Relators, *v.* DISTRICT COURT et al., Respondents.

(No. 6,858.)

(Submitted April 11, 1931. Decided May 4, 1931.)

[300 Pac. 235.]

*Mr. C. A. Spaulding,* for Relators, submitted a brief and argued the cause orally.

*Mr. E. J. Stromnes,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In December, 1930, the relators, Musselshell County and Norman M. Moody, its clerk, filed in the district court a petition for a writ of review, directed to the State Board of Equalization, to determine the correctness of certain orders made by the State Board respecting the levy and assessment of taxes against the Morris Development Company, a corporation, on lands lying in Musselshell county. Honorable William L. Ford, Judge of the Fourteenth Judicial District, was duly designated to hear the matter, accepted the call and, in due time, called the matter up; whereupon relators presented their petition to the court and asked that the writ command the State Board to certify its records to the court or show cause why it should not do so. In disposition of the matter the judge, in writing, declared: "It is hereby ordered that the said application be, and the same is hereby, denied and the court and the judge thereof hereby refuses to issue said Writ of Review or an Order to show Cause why such Writ of Review should not issue."

Relators applied to this court for an alternative writ of mandate to compel the district court and the Honorable William L. Ford to assume jurisdiction of the matter and to act in

the premises, or to show cause why they should not do so. The application contains the record made by the district court. From the petition for the writ of review we determined that relators made out a prima facie right to the issuance of the writ, and thereupon ordered the issuance of an alternative writ of mandate, returnable on April 11, 1931. The writ was duly issued and served and, upon return day, the respondent court and judge appeared by counsel and moved to quash the writ on the ground of lack of jurisdiction, and, without waiver of the motion, made due return to the writ.

The question presented for determination is whether or not, under these facts and in conformity with the rules governing in this class of cases, we have authority to issue a writ of mandate.

In determining whether action by a court or judge may be compelled by the writ of mandate, the essential questions to be decided are, whether the act sought to be compelled is one "which the law specially enjoins as a duty resulting from an office, trust or station" (sec. 9848, Rev. Codes 1921), and whether there is "a plain, speedy and adequate remedy in the ordinary course of law." (Sec. 9849, Id.) A negative answer to the first question bars the issuance of the writ, and, irrespective of the answer to that question, an affirmative answer to the second, divests the court of authority to issue it. (*State ex rel. Breen* v. *Toole*, 32 Mont. 4, 79 Pac. 403; *State ex rel. King* v. *Second Judicial District Court*, 24 Mont. 494, 62 Pac. 820.) The rules and tests hereinafter discussed are only statements as to the methods by which the courts have determined the existence of the two conditions necessary to the issuance of the writ. (16 Cal. Jur. 819.)

Among these tests is the well-established rule that mandamus ▮▮▮▮ lies to compel action, but not to control discretion (*State ex rel. Stuewe* v. *Hindson*, 44 Mont. 429, 120 Pac. 485; *State ex rel. Scollard* v. *Board of Examiners*, 52 Mont. 91, 156 Pac. 124), and, in its application, it is undoubtedly the general rule that a court has no power by writ of mandate to compel a subordinate judicial officer to reverse a conclusion already reached, to correct an erroneous decision, or to direct him in

what particular way he shall proceed or shall decide a special question. "But it is equally a part of this general rule that the court always has the power by means of such a writ to compel an officer to try and decide a controversy within his jurisdiction, or to perform any other plain duty imposed by law, and it is very generally admitted that the power to compel such an officer to the trial and determination of a case which it is his duty to hear and decide necessarily includes within it the power to compel him to reverse and set aside any erroneous decision he may have made to the effect that he will not proceed to such trial and judgment." (18 R. C. L. 299.) In other words, mandamus will lie to compel a court to assume jurisdiction and determine the merits of the cause, where it has erroneously refused to do so upon what may be termed a preliminary objection based upon a matter of law (38 C. J. 611, and cases cited), and this is so whether or not there is a "preliminary objection" interposed. If a court erroneously decides, as a matter of law, that it has no jurisdiction and thus denies a litigant the right to be heard on the merits and refuses to determine the facts, or to proceed, it has failed to perform a duty imposed by law, and mandamus will lie, unless there is a specific and adequate remedy by appeal, writ of error or other method of review. (38 C. J. 610, and long list of cases cited, among them, several decisions by this court.)

The reason why this seeming conflict with the general rule is in fact in harmony with that rule is clearly explained in a quotation found in *State ex rel. Keane* v. *Murphy,* 19 Nev. 89, 6 Pac. 840: "The rule above stated applies only to the *act to be commanded* by the writ, and not to the determination of purely preliminary questions. In every case in which an officer is to take any action, * * * the officer must first make up his mind as to whether the conditions upon which he is to act exist. In arriving at his conclusion he may have to ascertain the meaning of the law, or satisfy himself as to the existence of facts, or both. Such questions may be extremely difficult. The law governing the case may be obscure and ambiguous, and the facts may depend upon conflicting evidence. But they have to be determined by the officer in every case,

whatever may be the nature of the act to be performed. They are not what the writ commands, if issued. The writ does not command the officer to make up his mind as to whether the act is proper to be performed. The court determines that question before issuing the writ; * * * the question must be determined, in the first instance, by the officer, before he performs or refuses to perform, the act, and afterwards by the court before the writ can issue. As they must be determined before the act can be commanded, they are clearly distinct from and preliminary to the act. Now, the rule above stated does not apply to such preliminary questions. If it did, no writ of mandamus could ever issue, and the machinery provided by the Code for trying the question would be useless. The distinction above stated applies, not only whether the act to be performed is purely ministerial, * * * but also where it is judicial in character."

As stated by the supreme court of Michigan, "where an inferior court has refused to entertain jurisdiction on a matter preliminary to a hearing on the merits, mandamus is an appropriate remedy; * * * this is not an application to review an order made in the course of a proceeding, but rather for an order compelling the court to act." (*Brown* v. *Pontiac Mining Co.,* 105 Mich. 653, 63 N. W. 1000.)

These, and many other, cases are cited and comments thereon made in an exhaustive note entitled "Mandamus to compel Court to issue or exercise Jurisdiction where it has erroneously dismissed the Cause or refused to proceed on the Ground of Supposed Lack of Jurisdiction," found in 4 A. L. R., at page 582.

The foregoing rules authorizing the issuance of a writ of mandate to compel a hearing and disposition of a pending case, even though the trial court has, in good faith, determined that the matter is not properly before it and refused such action, are recognized and applied by this court in the following cases: *State ex rel. Mathews* v. *Eddy,* 10 Mont. 311, 25 Pac. 1032; *State ex rel. Kellogg* v. *District Court,* 13 Mont. 370, 34 Pac. 298; *Raleigh* v. *First Judicial District Court,* 24 Mont. 306, 81 Am. St. Rep. 431, 61 Pac. 991; *State ex rel. Northern Pac.*

*Ry. Co.* v. *Loud,* 24 Mont. 428, 62 Pac. 497; *State ex rel. Happel* v. *District Court,* 38 Mont. 166, 129 Am. St. Rep. 636, 35 L. R. A. (n. s.) 1098, 99 Pac. 291; *State ex rel. Arthurs* v. *Board of County Commrs.,* 44 Mont. 51, 118 Pac. 804; *State ex rel. Payne* v. *District Court,* 53 Mont. 350, 165 Pac. 294.

In the case at bar the trial court was merely called upon to determine whether or not the petition filed entitled the relators to a writ requiring the State Board of Equalization to certify its record, in the tax matter described, to that court for review —a purely preliminary matter having nothing to do with a determination of the proceeding on the merits.

No good purpose would be served by reciting herein the allegations of the petition; we have examined them and determined that they present a prima facie right in the petitioners to the issuance of the writ applied for, and, therefore, that the trial court erroneously determined this preliminary matter. It follows that the writ should go unless barred, as contended, by the existence of a right of appeal from the action of Judge Ford.

It is clear that no appeal would lie from the order made, ▉▉▉ as it is neither a judgment nor an appealable order (secs. 9729 and 9731, Rev. Codes 1921); nor would it have been appealable had it contained a positive direction that the proceeding be dismissed. (*Pentz* v. *Corscadden,* 49 Mont. 581, 144 Pac. 157.) It is true that where the party entitled thereto fails to have judgment entered, the party against whom the court has made a decision determining the rights of the parties, may have judgment entered and appeal from the judgment, but a judgment of dismissal of an action can only be entered on an order of nonsuit or dismissal. (1 Freeman on Judgments, 5th ed., 40.) Such an order is made on motion of one party or the other in a pending action or proceeding, and "a voluntary dismissal by plaintiff, being a waiver of all previous errors, cannot form the basis of an appeal by him, unless, perhaps, his action is practically forced and may for that reason be regarded as involuntary." (1 Freeman on Judgments, above, at page 42.) Illustrations of such a forcing are where, in a bi-party controversy, plaintiff's pleadings are destroyed or

so emasculated that the court loses jurisdiction to try the case (*Placer County* v. *Freeman,* 149 Cal. 738, 87 Pac. 628). In the case at bar, a dismissal by relators on the order made might well be held a voluntary dismissal, for all that the order amounted to was a refusal of the court to issue process to bring in the State Board; it did not indicate the court's grounds for such refusal and did not order the proceeding dismissed. On preliminary examination of the petition the court may have decided that, in the opinion of the presiding judge, it was insufficient in some amendable particular, or may have determined that, for some supposedly fundamental reason, the court was without jurisdiction regardless of the allegations of the petition. In this situation, had relators attempted to have judgment entered, as it is contended they should have done, they would have been compelled to enter into a colloquy or litigation with the court, no opposing party being in the case. They would have been called upon to first secure, from the presiding judge, a statement as to his reasons for his action and, if advised that he considered the petition insufficient for some stated reason, to ask for leave, and time in which, to amend, or to have stated that they stood upon their pleadings and ask that their default, for failure to further plead, be entered, on which, if the court were willing to so far accommodate them, they could have had the suggested judgment entered.

On the other hand, if advised that the court was of the opinion that it was without jurisdiction, relators would have been under the necessity of asking the court to make a further order of dismissal, and on that order have judgment of dismissal entered. No such burden rested upon the relators in order to protect their rights; they were entitled to litigate as against real parties to the action and were not called upon to indulge in shadow-boxing.

Even if a judgment had been entered it would not be such a judgment as is in contemplation of the statutes granting the right of appeal. A judgment is "the final determination of the rights of the parties to an action or proceeding" (sec. 9313, Rev. Codes 1921), and "that only is a judgment which is pronounced between the parties to an action upon a matter

submitted to the court for decision." (15 R. C. L. 570.)
Running all through the judicial definitions of a "judgment"
is the idea of the settlement of a controversy between two
opposing parties, or a matter properly submitted to a court
*ex parte.*

Where the nature of the action is such that one party seeks
to fix a liability upon another, there can be no judgment in
the sense that the term is here used, unless the other party is
before the court, subject to be bound by the judgment. But if
such a judgment as is here suggested was entered and relators
then sought to appeal therefrom, on whom would they serve
notice of appeal, and who would appear to present the matter
to this court? The district judge who made the order? He
is not a party to the proceeding, nor would he be a party to
the appeal. This anomalous situation is apparent in this pro-
ceeding, wherein the attorney for the State Board—the party
the court refused to bring into the action—appeared for the
respondent court and judge.

If an appeal from a judgment of dismissal should be enter-
tained, the appellate court would be called upon, after re-
versal, to issue, as a part of the opinion, or following it, a man-
date to the trial court to issue the writ for which application
was made, or the appeal would be inadequate.

The existence of an inadequate right of appeal is not a bar
to the issuance of a writ of mandamus (*In re Connaway,* 178
U. S. 421, 44 L. Ed. 1134, 20 Sup. Ct. Rep. 951; *State ex rel.
Montana Central Ry. Co.* v. *District Court,* 32 Mont. 37, 79
Pac. 546; *State ex rel. Stiefel* v. *District Court,* 37 Mont. 298,
96 Pac. 337).

Consequently, the rule has been almost universally adopted
that, from a judgment of dismissal for want of jurisdiction, no
appeal lies and the only remedy is by mandamus. In *State
ex rel. Shannon* v. *Hunter,* 3 Wash. 92, 27 Pac. 1076, the re-
spondent made the contention here made, and, in overruling it,
the court, after reviewing authorities, said: "It will be seen
from the above that the supreme court of the United States
has from an early date uniformly held to a different doctrine

from that contended for by respondent. If we look to the decisions of the courts of last resort in the states, we find them almost uniformly upon the same side of the question." For a full discussion of the subject, with citation of authorities, see 4 A. L. R. 589–599, in which it is said that "there are a few courts, including the supreme court of the United States, that have apparently taken the position that mandamus will not lie unless the inferior court refused to take jurisdiction *ab initio.*" This statement is in line with our discussion above. If all parties to a proceeding are before the court and on presentation by plaintiff and objection by defendant, the court determines a matter squarely before it, a case is presented in which an appeal might lie and would be effective, but here the court "refused to take jurisdiction *ab initio*" and barred any right of appeal.

Mandamus is the proper remedy and brings the action of the trial court before this court for review. (*In re Connaway*, above.)

It is ordered that a peremptory writ of mandamus issue, directing the respondents to set aside the order refusing to act in the premises, and to issue the writ of review or an order to show cause why the same should not issue, in accordance with the application made.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.